# United States Court of Appeals for the Federal Circuit

---

**In re: HTC CORPORATION,**
*Petitioner*

---

2018-130

---

On Petition for Writ of Mandamus to the United States District Court for the District of Delaware in No. 1:17-cv-00083-LPS, Chief Judge Leonard P. Stark.

---

YAR ROMAN CHAIKOVSKY, Paul Hastings LLP, Palo Alto, CA, for petitioner. Also represented by PHILIP OU; JOHN W. SHAW, Shaw Keller LLP, Wilmington, DE.

ANDRES HEALY, Susman Godfrey LLP, Seattle, WA, for respondents 3G Licensing, S.A., Koninklijke KPN N.V., Orange S.A. Also represented by ALEXANDRA GISELLE WHITE, Houston, TX.

---

**ON PETITION**

---

Before PROST, *Chief Judge,* WALLACH and TARANTO, *Circuit Judges.*

PROST, *Chief Judge.*

**O R D E R**

HTC Corporation petitions for a writ of mandamus directing the United States District Court for the District of Delaware to (a) vacate its December 18, 2017 order denying-in-part HTC Corporation's motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3); and (b) dismiss the complaint against HTC Corporation. 3G Licensing, S.A., Orange S.A., and Koninklijke KPN N.V. (collectively, "Respondents") oppose.

In January 2017, Respondents filed their patent infringement suit against HTC Corporation, a Taiwanese corporation with its principal place of business in Taiwan, and its wholly owned U.S. based subsidiary, HTC America, Inc., a Washington corporation with its principal place of business in Seattle, Washington. In June 2017, after Respondents filed their second amended complaint, HTC Corporation and HTC America filed a motion to dismiss for improper venue pursuant to Rule 12(b)(3) or, in the alternative, to transfer the case to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).

In its December 18, 2017 order, the district court found that venue was not proper as to HTC America but was proper as to HTC Corporation. App. 1–7. Following the order, Respondents voluntarily dismissed their suit against HTC America without prejudice. HTC Corporation now files this mandamus petition seeking dismissal for improper venue.[1]

## DISCUSSION

A writ of mandamus is a drastic remedy available only in extraordinary circumstances. Such a writ may issue

---

1   On March 28, 2018, the petition was dismissed for failure to pay the docketing fee. The petition was reinstated on March 29, 2018, after Petitioner paid the docketing fee and moved to vacate the dismissal order.

only where the following conditions are met: (1) the petitioner must have no other adequate means to attain the relief desired; (2) the petitioner must demonstrate a "clear and indisputable" right to the issuance of the writ; and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004).

## I

A party seeking mandamus must demonstrate that it has "no other adequate means to attain the relief [it] desires." *Cheney*, 542 U.S. at 380 (quoting *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976)). This requirement is "designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380–81.

The mandamus petition in this case is based on the denial of a motion to dismiss under Rule 12(b)(3) or, alternatively, to transfer under § 1406(a), for improper venue.[2] While this court has granted mandamus petitions based on the denial of motions to transfer under 28 U.S.C. § 1404(a) with some frequency,[3] we have done so

---

[2] Objections to improper venue are made through a Rule 12(b)(3) motion, and § 1406(a) provides for either dismissal or transfer if venue is found to be improper. *See* § 1406(a); Fed. R. Civ. P. 12(b)(3).

[3] *See, e.g.*, *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2008). Section 1404(a) governs changes of venue "[f]or the convenience of parties and witnesses, in the interest of justice." "Unlike § 1406(a), § 1404(a) does not condition transfer on the initial forum's being

less frequently with respect to petitions based on the denial of motions under § 1406(a) asserting *improper* venue. *See In re Cray Inc.*, 871 F.3d 1355, 1367 (Fed. Cir. 2017); *In re Micron Tech., Inc.*, 875 F.3d 1091, 1102 (Fed. Cir. 2017). This divergence, in part, relates to the first requirement for granting mandamus—that the mandamus petitioner have no other adequate means to attain the relief desired.[4]

Unlike a defendant challenging the denial of a § 1404(a) transfer motion,[5] a defendant aggrieved by the

---

'wrong.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

[4]  We need not decide whether to apply regional or Federal Circuit law in evaluating whether post-judgment appeal is adequate for review of a denial of a § 1406(a) motion. We agree with the Third Circuit on that issue.

[5]  Two reasons have been stated for the inadequacy of post-judgment appeals as a remedy for denials of § 1404(a) challenges, i.e., for why such cases "normally deal with an issue, the convenience of parties and witnesses, which in its nature must be reviewed before trial, if at all." *Gulf Research & Dev. Co. v. Leahy*, 193 F.2d 302, 305 (3d Cir. 1951) (internal quotation marks omitted). First, the purpose of § 1404(a) is to avoid burdening parties and witnesses with unnecessary inconvenience and expense, so by the time a case is tried and appealed, for example, witnesses would have suffered the inconvenience of traveling to a distant forum. In short, the mandamus petitioner would have suffered the very inconvenience the statute seeks to avoid. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (5th Cir. 2008) (en banc). Second, mere inconvenience does not support a showing of *harmful* error under 28 U.S.C. § 2111 and Fed. R. Civ. P. 61 on appeal after judgment. *See, e.g.*, *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663 (7th Cir. 2003)

denial of an improper-venue motion has an adequate remedy on appeal from a final judgment. Specifically, if after judgment venue is determined to have been improper, and the improper-venue objection was not waived, the appellants "will be entitled to assert it on appeal and, if the objection is sustained, obtain from [the appeals] court an order vacating the judgment . . . and directing the remand of the action to the [appropriate venue]." *Gulf Research & Dev. Co. v. Leahy*, 193 F.2d 302, 304–05 (3d Cir. 1951); *see id.* ("[A]n appeal in this action will be just as adequate as in any other case where an objection to jurisdiction or venue is overruled by the trial court and after a trial on the merits the objection is sustained on appeal from the final judgment." (footnote omitted)); *Chi., R.I. & P.R. Co. v. Igoe*, 212 F.2d 378, 381 (7th Cir. 1954) ("[A]ny judgment entered in the cause is a nullity, an error correctible on appeal."); *cf. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41–43 (1998) (indicating that a strict venue limitation, such as § 1391(a), "is sufficient to establish the substantial character of any violation," making such a violation not harmless error under 28 U.S.C. § 2111). Given the availability of adequate relief on appeal, mandamus review of improper-venue decisions is generally inappropriate. *See Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 379–84 (1953) (holding that mandamus review of an improper-venue decision was inappropriate and noting it was not clear that an adequate remedy could not be afforded); *Comfort Equip. Co v. Steckler*, 212 F.2d 371, 374–75 (7th

(inconvenienced appellant "would not be able to show that it would have won the case had it been tried in a convenient forum"); *see also In re Volkswagen of Am.*, 545 F.3d at 318–19 (citing the harmless error rule, Fed. R. Civ. P. 61, and holding that appeal would provide no remedy for a "patently erroneous" denial of a § 1404(a) convenience transfer).

Cir. 1954) (denying mandamus review of an improper-venue motion); *Gulf Research*, 193 F.2d at 304–05 (denying mandamus review of an improper-venue motion in a patent case and stating that "an appeal in this action will be just as adequate as in any other case where an objection to jurisdiction or venue is overruled by the trial court and after a trial on the merits the objection is sustained on appeal from the final judgment" (footnote omitted)).

Although Petitioner argues that it should "not be forced to litigate this case in an improper venue through a final judgment before it can contest venue via appeal," Pet'r's Br. 6, the Supreme Court rejected this same argument in *Bankers Life*, explaining that "the extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial." *Bankers Life*, 346 U.S. at 383 (citations omitted); *see also Comfort Equip.*, 212 F.2d at 375 ("If the correctness of [the judge's] ruling on the [improper-venue] motions to dismiss must await an appeal from the final disposition of the case on its merits in the district court, there is no unusual inconvenience or hardship."). Decisions of this court and the Third Circuit reflect that reasoning. *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011) ("To issue a writ [of mandamus] solely for th[e] reasons [that a defendant will be forced to undergo the cost of discovery and trial] would undermine the rare nature of its form of relief and make a large class of interlocutory orders routinely reviewable." (citing *Bankers Life*, 346 U.S. at 383)); *Gulf Research*, 193 F.2d at 304–05 ("The mere fact that the petitioners will be put to the inconvenience and expense of what may prove to be a wholly abortive trial is an argument which might be addressed to Congress in support of legislation authorizing interlocutory appeals but does not constitute ground for invoking mandamus power.").

To be sure, while an appeal will usually provide an adequate remedy for a defendant challenging the denial of

an improper-venue motion, there may be circumstances in which it is inadequate. We need not articulate such circumstances here, as Petitioner's only argument is that it should be able to avoid the inconvenience of litigation by having this issue decided at the outset of its case. This is insufficient, and there is no other indication that Petitioner cannot be afforded adequate relief on appeal.

## II

A party seeking issuance of a writ of mandamus must also demonstrate that the right to the writ is clear and indisputable. *Cheney*, 542 U.S. at 381 (quoting *Kerr*, 426 U.S. at 403). Petitioner has failed to meet this burden.

The district court in this case relied on *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 706 (1972), and § 1391(c)(3) to hold that HTC Corporation, as a foreign corporation, is subject to suit in any judicial district. App. 3. Petitioner argues that the district court erred in three ways: (1) by applying § 1391(c)(3) in a patent case; (2) by relying on *Brunette*, which interpreted a prior version of § 1391; and (3) by not applying the patent venue statute, § 1400(b). We see no error in the district court's analysis. As explained below, Petitioner's arguments are fully addressed by reaffirming the "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *Brunette*, 406 U.S. at 714.

## A

The issue of whether the venue laws protect alien defendants is colored by a long statutory and judicial history, including two cases in which the Supreme Court directly addressed this same question. *Id.* at 707; *In re Hohorst*, 150 U.S. 653, 659 (1893).

As explained in *Brunette*, the origins of the venue laws extend back to the Judiciary Act of 1789. *Brunette*, 406 U.S. at 708. The original venue restriction stated:

> [N]o civil suit shall be brought before [district or circuit] courts *against an inhabitant of the United States*, by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ . . . .

Act of Sept. 24, 1789, ch. XX, § 11, 1 Stat. 79 (1789) (emphasis added). Because this venue limitation applied "only to suits against 'an inhabitant of the United States,' suits against aliens were left unrestricted, and could be tried in any district." *Brunette*, 406 U.S. at 708.

The Court addressed this background principle (referred to for convenience as the alien-venue rule) in *In re Hohorst*, which involved the Hamburg-American Packet Company, a German corporation, as defendant. 150 U.S. at 654. The Court held that the then-existing venue statute did not govern suits by citizens against alien defendants. *Id.* at 662; *see also Galveston, H. & S.A. Ry. Co. v. Gonzales*, 151 U.S. 496, 507 (1894) ("[I]f the suit be against the alien, he may doubtless, under [*Hohorst*], be sued in any district wherein he is found."). At the time, the statute read, in relevant part:

> [N]o civil suit shall be brought before [district or circuit] courts against *any person* by any original process or proceeding in any other district than that whereof he is an inhabitant . . . .

Act of Mar. 3, 1887, ch. 373, § 1, 24 Stat. 552 (emphasis added); *Hohorst*, 150 U.S. at 660. The Court explained that "person," as used in the statute, referred to "inhabitants of some district within the United States," describing the shift in language from the original 1789 statute as immaterial. *Hohorst*, 150 U.S. at 660–61. Accordingly, the Court held that the venue restriction was "inapplicable to an alien or a foreign corporation sued here, . . . and that, consequently, such a person or corporation may be sued by a citizen of a state of the Union in any district in

which valid service can be made upon the defendant." *Id.* at 662.

In *Brunette,* the Supreme Court reaffirmed its reasoning in *Hohorst*, despite the intervening enactment of the Judicial Code of 1948, which included then-§ 1391(d) and § 1400(b) (the patent venue statute). *Brunette*, 406 U.S. at 710 ("The reasoning of *Hohorst* with respect to suits against aliens continues to have force today."). The issue before the Court in *Brunette* was "which provision of Title 28 governs the venue of an action for patent infringement against an alien defendant"—§ 1400(b) or then-§ 1391(d). *Id.* at 706–07. Section 1391(d), at the time, stated that "[a]n alien may be sued in any district." § 1391(d) (1970).

The Court upheld the alien-venue rule, despite the existence of § 1400(b), emphasizing the need to avoid a venue gap, where the federal courts have jurisdiction, but where no proper venue to exercise that jurisdiction exists. *Brunette,* 406 U.S. at 709–10 (noting the reasoning in *Hohorst* that "the venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate or convenient federal forum"). Looking to the relevant venue statutes, the Court found that applying those statutes to alien defendants would create a venue gap. *Id.* at 710. The Court thus preserved the alien-venue rule, noting that "Congress does not in general intend to create venue gaps," and that "in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap." *Id.* at 710 n.8.

Moreover, emphasizing its treatment of the alien-venue rule as a background principle in *Hohorst*, the Court noted that "in the 79 years since *Hohorst* was decided, Congress has never given the slightest indication that it is dissatisfied with the longstanding judicial view that the 1789 language continues to color the venue statutes, with the result that suits against aliens are

outside the scope of all the venue laws." *Id.* at 710–11. Therefore, the Court concluded that the "broad and over-riding" principle stated in then-§ 1391(d) "cannot be confined in its application to cases that would otherwise fall under the general venue statutes," as the statute merely reflected the "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." *Id.* at 714. The Court thus upheld the alien-venue rule and held that the Canadian corporation defendant in that case, Brunette Machine Works, Ltd., could not rely on § 1400(b) as a "shield" against suit in a particular district. *Id.*

B

Despite the Court's having affirmed this overriding principle on two separate occasions, Petitioner now contends that § 1400(b) should apply to it because Congress abrogated *Brunette*—and the alien-venue rule—through the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("the 2011 amendments"). Pet'r's Br. 22.

In the 2011 amendments, Congress revised § 1391(a)–(d), among other subsections. As amended, § 1391(c) reads:

(c) **Residency.**—For all venue purposes—

(1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled;

(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a

> plaintiff, only in the judicial district in which it maintains its principal place of business; and
>
> **(3)** a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

28 U.S.C. § 1391(c).

As explained below, we believe Congress did not intend the 2011 amendments to upend the centuries-old understanding that the venue laws (as opposed to requirements of personal jurisdiction) do not restrict the location of suits against alien defendants, unless Congress has specifically provided otherwise. First, as the Court held in *Brunette*, § 1400(b) itself was not intended to apply to alien defendants. Second, nothing in the 2011 amendments to § 1391 changed this understanding of § 1400(b). Third, against the historical background leading up to and including *Brunette*, the 2011 amendments do not sufficiently indicate an intent to make venue protections applicable to alien defendants, with a limited exception not relevant here—applicable to natural persons who are aliens but have been lawfully admitted to the United States for permanent residence. Fourth, Petitioner's contrary view would make some foreign corporations that infringe a U.S. patent unamenable to domestic suit even though personal jurisdiction exists—a gap we cannot conclude Congress created.

1

At the outset, the patent venue statute was not intended to supplant the longstanding rule that the venue laws do not protect alien defendants. *Brunette*, 406 U.S. at 711–14. Given that § 1400(b) has not been amended

since *Brunette*, the Court's explanation of § 1400(b) remains instructive—and binding—today.

In *Brunette*, the Court rejected the argument that Congress intended the patent venue statute to regulate venue in patent suits against aliens. *Id.* at 711. In doing so, the Court explained:

> Since the general venue statutes did not reach suits against alien defendants, there is no reason to suppose the new substitute in patent cases was intended to do so. Indeed, the only glimmer of evidence of legislative intent points in the other direction. . . . [I]n 1948 [when Congress codified § 1391(d)], Congress was apparently quite content to leave suits against alien defendants exempt from the venue statutes, *in patent cases as in all others*.

*Id.* at 713–14 (emphasis added).[6]

The Court's recent decision in *TC Heartland* does not alter this conclusion. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 n.2 (2017). *TC Heartland* continued a line of cases that interpreted the relationship between the patent venue statute and the general venue statute. *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 225 (1957); *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 563 (1942). *Brunette* addressed *Stonite* and *Fourco*, recognizing the Court's prior refusal to apply the general venue provisions to patent infringement cases. *Brunette*, 406 U.S. at 711. That, however, did not deter the Court from applying the well-established alien-venue rule, even though that rule had been codified in § 1391(d). The Court explained that

---

6    As explained in Section II.A of this order, at the time of the *Brunette* decision, § 1391(d) stated: "An alien may be sued in any district." § 1391(d) (1970).

unlike the venue provisions at issue in *Stonite* and *Fourco*, § 1391(d) was "not derived from the general venue statutes that § 1400(b) was intended to replace." *Id.* at 712–13. Instead, the Court concluded:

> [I]n § 1391(d) Congress was stating a principle of broad and overriding application, and not merely making an adjustment in the general venue statute, as this Court found Congress had done in *Stonite* and *Fourco*. The principle of § 1391(d) cannot be confined in its application to cases that would otherwise fall under the general venue statutes. For § 1391(d) is properly regarded, not as a venue restriction at all, but rather as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special.

*Id.* at 714. The Court thus held that the alien defendant in that case, a foreign corporation like Petitioner here, could not use § 1400(b) as a shield against suit in a particular district court. *Id.* In short, while § 1400(b) governs venue in patent cases, it governs only to displace otherwise-applicable venue standards, not where there are no such standards due to the alien-venue rule. *See id.*

2

Given that § 1400(b) itself does not provide an exception to the alien-venue rule, we next ask whether the 2011 amendments to the general venue statute somehow altered the meaning of § 1400(b) so as to change how the alien-venue rule applies in patent cases. As Petitioner concedes, "absent from the House Judiciary Committee report is any discussion or even mention of patent cases such as *Fourco* or *Brunette* and the interplay between those decisions and the amendments to the general venue

statute." Pet'r's Br. 20.[7] There is no indication Congress intended to modify the alien-venue rule specifically for patent cases.     Accordingly, *Brunette*'s holding that § 1400(b) does not govern suits against aliens still applies at least where other venue standards remain inapplicable to aliens—which, as we next conclude, is true here.

3

Petitioner's final argument is that the reasoning underlying *Brunette*—that aliens fall outside the venue laws entirely—has been abrogated by the 2011 amendments. Pet'r's Br. 22.  Therefore, the argument goes, because the set of venue laws, general and special, now apply to alien defendants, and because § 1400(b) is the sole and exclusive provision governing patent venue, HTC should be able to use § 1400(b) as a venue defense.  In other words, HTC argues that Congress intended to discard the well-

---

[7]    While Petitioner argues that the House Report should be read as "clearly separating any application of the general venue provisions from the specialized venue statutes," *see* Pet'r's Br. 20, this argument misses the mark.  This issue does not turn on whether § 1400(b) can be read in conjunction with a particular section of the general venue statute; instead the question is the same one posed in *Brunette*—namely, whether Congress intended to abrogate the centuries-old rule that all venue laws, both general and special, do not apply to suits against alien defendants, regardless of whether that longstanding rule has been codified in the general venue statute.  *See Brunette*, 406 U.S. at 714 ("The principle of § 1391(d) cannot be confined in its application to cases that would otherwise fall under the general venue statutes.  For § 1391(d) is properly regarded . . . as a declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special.").

established alien-venue rule in favor of generally bringing alien defendants, including foreign corporations like the defendants in *Hohorst* and *Brunette*, within the protection of the venue laws. We find no such intent. The textual changes made to § 1391 in 2011 no more support an inference of the suggested radical displacement of the *Hohorst*/*Brunette* rule than did the textual changes *TC Heartland* held inadequate to displace the *Fourco* rule.

At the outset, it is important to note the broad implications of Petitioner's argument. A holding that the 2011 amendments altogether discarded the alien-venue rule would extend far beyond patent law and would impact other types of civil cases. Given that this would be a sea change in federal venue law, we expect Congress would make its intent clear, if indeed this was its intent.

Congress made only one clear change to the alien-venue rule in 2011. That was only a modest adjustment limited to natural persons. Congress did not clearly make—and did not otherwise express an intent to make—a change to the rule as it affects foreign corporations.

In light of certain inconsistencies in how the term "resides" had been interpreted, Congress enacted the current versions of § 1391(c)(1)–(2) to include express definitions of residency for natural persons and for unincorporated entities (in addition to residency for corporations, which had previously been defined). *See* H.R. Rep. No. 112-10, at 20–21 (2011) ("House Report") (noting that some courts had extended the definition of a natural person's residence, for venue purposes, beyond the person's domicile to potentially include the location of a summer home; and noting a split of authority regarding venue for unincorporated associations). Congress also made two other specific changes regarding venue as to natural persons. First, Congress altered how permanent residents (who are, nonetheless, "aliens") should be treated for venue purposes. *See id.* at 23 ("[T]he proposed statute would grant a

venue defense to permanent resident aliens who are domiciled in the United States."). Second, Congress removed venue protections for U.S. citizens domiciled abroad. *See* § 1391(c)(3); House Report at 22 ("This would mean that aliens and United States citizens domiciled abroad could not claim a venue defense to the location of litigation. Prohibiting United States citizens domiciled abroad from raising a venue defense would be a change in current law."). *See generally* 14D Charles A. Wright et al., *Federal Practice & Procedure* § 3810 (4th ed. Apr. 2018 update).

Congress thus slightly modified the well-established alien-venue rule in one respect. It granted venue protection to alien natural persons having permanent resident status. § 1391(c)(1).[8] In doing so, it aligned the venue laws with the already-existing treatment of permanent resident aliens for certain jurisdictional purposes. *See* House Report at 23 (noting that the version of § 1332(a) in existence at the time already recognized that "permanent resident aliens may be viewed as citizens of their state of domicile for certain jurisdictional purposes"); *see also* 28 U.S.C. § 1332(a) (1988); Wright, *Federal Practice & Procedure* § 3810 ("Since 1988, Section 1332(a)(2) has defined permanent resident aliens as citizens of the states in which they are domiciled for purposes of diversity of citizenship jurisdiction. It made little sense not to do the same regarding their residence for venue purposes."). This minor change with respect to one discrete class of

---

[8]    Section 1391(c)(3) eliminated venue protections for certain *non*-aliens (specifically, U.S. citizens domiciled abroad). Adding to the group of persons denied venue protection does not curtail the denial of venue protection to aliens. Only adding to the group of persons *provided* venue protection, *e.g.*, § 1391(c)(1), does that.

individuals is insufficient to upend the centuries-old rule that the venue laws do not protect alien defendants.

There is no comparable change with respect to foreign corporations. Petitioner relies on § 1391(c)(2) and the fact that it does not expressly limit itself to domestic entities, and on that basis argues that a foreign corporation now is deemed a resident in the United States wherever it is subject to personal jurisdiction. We are not persuaded. The mere absence of an express foreign-corporation exclusion from § 1391(c)(2) is not enough to infer the sweeping repudiation of the *Hohorst*/*Brunette* rule that Petitioner's position produces. In fact, the conspicuous absence of any reference to aliens in § 1391(c)(2) is telling, since the immediately preceding paragraph, § 1391(c)(1), does expressly refer to aliens, extending venue protections to permanent resident aliens. At the same time, the immediately succeeding paragraph, § 1391(c)(3), uses broad language to *deny* venue protection to any "defendant not resident in the United States," with no exclusion of foreign corporations. And the accompanying House Report makes no mention of alien defendants being included in § 1391(c)(2). Quite the contrary—the House Report emphasizes that aliens will remain *without* a venue defense. House Report at 22 (discussing the shift from alienage to residency and stating "[t]his would mean that aliens and United States citizens domiciled abroad could not claim a venue defense to the location of litigation"); *id.* ("[F]or a party resident abroad, whether a natural person *or a corporation*, any venue privilege against suit in a particular Federal district court would be eliminated" (emphasis added)).[9]

---

[9]    For all of the reasons we have recited, including the *TC Heartland* decision, we do not think that the statute is properly read to adopt the view on this point expressed by the American Law Institute Federal Judicial

Finally, Petitioner contends that former § 1391(d) was not merely recodified in § 1391(c)(3). In light of the changes Congress implemented through the 2011 amendments, however, it is evident why former § 1391(d) had to be reformulated. *See* House Report at 23 ("[T]he deletion of the current language of 28 U.S.C. § 1391(d), combined with the proposed amendment to paragraph 1391(c)(1), would also permit permanent resident aliens domiciled in the United States to raise a venue defense."). To maintain "the consistent focus of determining venue by reference to the domicile of natural persons," *id.*, the language of § 1391(c)(3) had to be changed from "an *alien* may be sued in any district," *see* § 1391(d) (1970), to "a *defendant not resident in the United States* may be sued in any judicial district," § 1391(c)(3).[10] This shift in language is insufficient to indicate a move away from the longstanding alien-venue rule.

---

Code Revision Project 146–47, 200–01 (2004), from which the 2011 legislation derived through a process that changed the ALI's proposal (which included repeal of § 1400) and produced a quite different congressional committee explanation. We also do not adopt the brief statement on the issue in Wright, *Federal Practice & Procedure* § 3810 ("Because nothing in the statute limits the application of Section 1391(c)(2) to entities formed in the United States, the provision governs venue in cases involving entities formed in foreign countries." (citing *Poliseno v. Credit Suisse Secs. (USA), LLC*, 2013 WL 499509 (D. Mont. Feb. 8, 2013), *report & recommendation adopted*, 2013 WL 1767951 (D. Mont. Apr. 24, 2013))).

[10] Further, that former § 1391(d) now falls under § 1391(c) under the heading "Residency" is also not dispositive. This merely reflects the general shift in focus from alienage to residency.

4

Petitioner concedes that its interpretation of the venue laws could create a venue gap, where at least some alien defendants would be entirely exempt from patent infringement actions. Pet'r's Br. 9–10. It attempts to gloss over this problem, however, by arguing that no gap would exist in this case, as HTC Corporation's subsidiary, HTC America, is a resident of Washington, and venue for HTC Corporation could reasonably be based on where venue is proper for its subsidiary. Pet'r's Br. 10. But, even assuming we could completely disregard the corporate form in this case, there would still be cases, as Petitioner concedes, where a venue gap exists (because, under Petitioner's theory, § 1400(b) displaces § 1391(b), (c)). While Petitioner contends that abiding by *Brunette* creates a "loophole" for a plaintiff to forum shop, *see* Pet'r's Br. 11, that has always been the case. Meanwhile, Petitioner's argument creates a far more unsatisfactory loophole—a complete inability for a patent owner to bring its infringement claims against alien defendants that fall outside the non-residence-based clause of § 1400(b). *See Brunette*, 406 U.S. at 710 n.8 ("Congress does not in general intend to create venue gaps . . . . Thus, in construing venue statutes it is reasonable to prefer the construction that avoids leaving such a gap.").

With the Supreme Court having spoken on this issue twice, this court—without clear guidance from Congress—will not broadly upend the well-established rule that suits against alien defendants are outside the operation of the federal venue laws. Indeed, this longstanding rule has "continue[d] to color the venue statutes" since 1789. *Brunette*, 406 U.S. at 710–11. Because this case does not involve the sole clear modification Congress made to the rule in 2011, the rule, "which has prevailed throughout the history of the federal courts, controls this case." *Id.* at 714.

### III

The final requirement for mandamus to issue is that the issuing court, in its discretion, must be satisfied that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 381. Petitioner contends mandamus is warranted in this case to address an unsettled and important question of law. Pet'r's Br. 26–28. Although Petitioner attempts to characterize this legal issue as "unsettled" and resulting in "inconsistent" holdings, Petitioner does not cite a single case that has adopted its interpretation. Accordingly, even if Petitioner had satisfied the first two mandamus requirements discussed above, the court is not convinced that a writ would be warranted in this case.

### CONCLUSION

Petitioner has not satisfied the high standard necessary for a writ of mandamus to issue.

IT IS ORDERED THAT:

The petition for writ of mandamus is denied.

FOR THE COURT

 May 9, 2018                       /s/ Peter R. Marksteiner
     Date                         Peter R. Marksteiner
                                  Clerk of Court