# United States Court of Appeals for the Federal Circuit

2009-1283

HEWLETT-PACKARD COMPANY,

Plaintiff-Appellant,

v.

ACCELERON LLC,

Defendant-Appellee.


Charlene M. Morrow, Fenwick & West LLP, of Mountain View, California, argued for plaintiff-appellant. With her on the brief were Erin C. Jones; Lauren E. Whittemore and Darryl M. Woo and Heather N. Mewes, of San Francisco, California.

Jason W. Cook, Alston & Bird LLP, of Dallas, Texas, argued for defendant-appellee. With him on the brief were Patrick J. Flinn and George D. Medlock, Jr., of Atlanta, Georgia, and Sarah C. Hsia, of New York, New York.

Appealed from: United States District Court for the District of Delaware

Judge Sue L. Robinson

# United States Court of Appeals for the Federal Circuit

2009-1283

HEWLETT-PACKARD COMPANY,

Plaintiff-Appellant,

v.

ACCELERON LLC,

Defendant-Appellee.

Appeal from United States District Court for the District of Delaware in case no. 07-CV-650, Judge Sue L. Robinson.

_____

DECIDED:  December 4, 2009

_____

Before MICHEL, Chief Judge, NEWMAN, and MOORE, Circuit Judges.

MICHEL, Chief Judge.

Hewlett-Packard Company ("HP") sued Acceleron LLC ("Acceleron"), the owner of U.S. Patent No. 6,948,021 ("'021 patent"), in the United States District Court for the District of Delaware, seeking declaratory judgment of non-infringement and invalidity of the '021 patent.  The district court granted Acceleron's motion to dismiss for lack of declaratory judgment jurisdiction.  For the reasons set forth below, we reverse.

## I.     BACKGROUND

Acceleron is a patent holding company.  It is incorporated in Delaware and headquartered in Tyler, Texas.  Acceleron acquired the '021 patent on May 31, 2007.  On September 14, 2007, Thomas B. Ramey, III, President of Acceleron, wrote to

Michael J. Holston, HP's "Executive Vice-President, General Counsel/Secretary,"

regarding "U.S. Patent No. 6,948,021 to Derrico et al. . . ." The letter reads:

> I am writing to call your attention to the referenced patent. . . . This patent was recently acquired by Acceleron, and relates to Blade Servers.
>
> We would like an opportunity to discuss this patent with you. In order to provide a productive atmosphere in which we can do so, we ask that you agree that all information exchanged between the parties will not be used for any litigation purposes whatsoever, including but not limited to any claim that Acceleron has asserted any rights against any of your ongoing or planned activities, or otherwise created any actual case or controversy regarding the enclosed patent.
>
> Should you wish to engage in discussions regarding this patent with us, please return an executed copy of this letter to me in the enclosed stamped, self-addressed envelope. When we receive your acknowledgement, we will send you a package of information relating to this patent. I will look for your response by September 28, 2007, and if I do not hear from you by that time, I will assume you have no interest in discussing this patent.

On October 1, 2007, a senior litigation counsel at HP responded, writing:

> I have been evaluating the patent you sent and am interested to learn any further information you have so that I am able to conduct a complete and accurate assessment. HP shares your interest in creating a productive atmosphere for us to discuss the '021 patent. Accordingly, in response to your request that HP not file a declaratory judgment action, HP would be willing to agree not to file such an action for a period of 120 days if Acceleron similarly will agree not to file an action against HP during the same 120 day period. If such a mutual standstill agreement is acceptable, please let me know and I will send you an agreement to that effect directly.

Four days later, Mr. Ramey replied:

> I do not believe that HP has any basis for filing a declaratory judgment action, and I think that my letter provides both parties appropriate protections to create a productive atmosphere in which to discuss the '021 patent.
>
> So, if you are interested in discussing this patent with us, please send me a signed copy of my previous letter to you by no later than October 19, 2007. If I do not receive [one] by then, I will understand that

you are not interested in discussing this patent, and you do not have anything to say about the merits of this patent, or its relevance to your Blade Server products.

On October 17, 2007, HP filed this declaratory judgment suit in the United States District Court for the District of Delaware. Acceleron moved to dismiss the case for lack of subject matter jurisdiction. On March 11, 2009, the district court granted Acceleron's motion. Hewlett-Packard Co. v. Acceleron, LLC, 601 F. Supp. 2d 581 (D. Del. 2009). The court observes that, on one hand, Acceleron's "failure to specifically request a confidentiality agreement and to accept [HP's] 120-day stand-still proposal weigh[ed] the scale in favor of finding jurisdiction." Id. at 589. On the other hand, however, other circumstances in this case, including the lack of "a statement of infringement, identification of specific claims, claim charts, prior pleadings or litigation history, or the identification of other licensees" in Mr. Ramey's letters to HP, weighed against finding declaratory judgment jurisdiction. Id. After taking Acceleron's business model as a non-competitor patent holding company into consideration, the court held that, under the totality of the circumstances, at the time HP filed the suit, the litigation was "too speculative a prospect to support declaratory judgment jurisdiction." Id.

HP timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

A. Standard of review

This court reviews a grant or denial of a motion to dismiss for lack of subject matter jurisdiction de novo. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1377 (Fed. Cir. 2007). It reviews underlying factual findings for clear error. Id.

B.    Analysis

A court has subject matter jurisdiction under the Declaratory Judgment Act only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). In patent cases, declaratory judgment jurisdiction exists "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." SanDisk, 480 F.3d at 1381.

HP asserts that its declaratory judgment claims fall squarely within the standard set by SanDisk. According to HP, the fact that Acceleron wrote to HP, specifically identifying the '021 patent and HP's product line, i.e., an ongoing activity, is all that is required under SanDisk for the court to find declaratory judgment jurisdiction. We see nothing "squarely" about this case and SanDisk does not support HP's proposition. Intentionally or not, MedImmune may have lowered the bar for determining declaratory judgment jurisdiction in all patent cases; certainly it did so in the licensor-licensee context. See, e.g., Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 902 (Fed. Cir. 2008) ("[T]he now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases."). But a lowered bar does not mean no bar at all. Indeed, a declaratory judgment plaintiff must show that the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree

of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 549 U.S. at 127 (internal quotation marks and brackets omitted). Thus, a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a "definite and concrete" dispute. More is required to establish declaratory judgment jurisdiction.

Acceleron argues that it never asserted its rights under the '021 patent because its correspondence with HP did not contain language threatening to sue for infringement or demand a license. As a result, Acceleron contends that there is no justiciable case or controversy giving rise to declaratory judgment jurisdiction. We disagree.

Judge Markey eloquently described the dilemma facing a potential infringement defendant as

> the sad and saddening scenario that led to enactment of the Declaratory Judgment Act. In the patent version of that scenario, a patent owner engages in a danse macabre, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 734-35 (Fed. Cir. 1988) (citations omitted). The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as

"litigation" or "infringement." Of course, if "a party has actually been charged with infringement of the patent, there is, <u>necessarily</u>, a case or controversy adequate to support [declaratory judgment] jurisdiction." <u>Cardinal Chem. Co. v. Morton Int'l</u>, 508 U.S. 83, 96 (1993). But it is implausible (especially after <u>MedImmune</u> and several post-<u>MedImmune</u> decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement.

In its first letter to HP, Acceleron identified itself as the owner of the '021 patent, which it described as "relat[ing] to Blade Servers." The district court found that, in this letter, Mr. Ramey requested that HP "not file suit." <u>Hewlett-Packard</u>, 601 F. Supp. 2d at 587. Acceleron imposed a two-week deadline on HP to respond. In its second letter to HP, Acceleron again imposed a two-week deadline on HP and insisted that if HP did not respond to its original letter by the deadline, it would understand that HP did not "have anything to say about the <u>merits of this patent</u>, or its <u>relevance to [HP's] Blade Server products</u>." (emphases added). The district court found that this was a case where "a non-competitor patent holding company … directly contacted plaintiff regarding its rights in the '021 patent." <u>Id.</u> at 586. The court also found that (1) Acceleron failed to propose a confidentiality agreement, and (2) Acceleron failed to accept the terms of HP's 120-day standstill proposal or to provide a counter-proposal or some other reassurance it would not sue HP. <u>Id.</u> at 586-87. Acceleron does not dispute any of the district court's findings on appeal.

Acceleron argues that a patent owner may contact another party to suggest incorporating the patented technology into the other party's product, or to attempt to sell

the patent to the other party. Given the circumstances of this case, such an assertion appears disingenuous. We do not doubt that such scenarios as presented by Acceleron occur, and perhaps quite frequently. However, we doubt that in those situations, the patent owners would assert a patent as "relevant" to the other party's specific product line, impose such a short deadline for a response, and insist the other party not file suit. As the district court correctly recognized, these factors "must be considered along with all the circumstances at bar." Hewlett-Packard, 601 F. Supp. 2d at 587. We also agree with the district court that "the receipt of such correspondence from a non-competitor patent holding company . . . may invoke a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual property of its own to place on the bargaining table." Id. at 589. Under the totality of the circumstances, therefore, it was not unreasonable for HP to interpret Acceleron's letters as implicitly asserting its rights under the '021 patent.

Acceleron repeatedly emphasizes that "[a]t the time HP filed its complaint, Acceleron could not have asserted its rights in the '021 patent against HP because it had not even determined if it had a basis to assert the patent against HP." However, it is irrelevant whether Acceleron had conducted an adequate investigation or whether it subjectively believed HP was infringing. "The test [for declaratory judgment jurisdiction in patent cases], however stated, is objective . . . ." Arrowhead, 846 F.2d at 736 (emphasis added). "Indeed, it is the objective words and actions of the patentee that are controlling." BP Chems. v. Union Carbide Corp., 4 F.3d 975, 979 (Fed. Cir. 1993). Thus, conduct that can be reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction.

Acceleron points to the language in the letter from Mr. Ritz, a counsel from HP, in which he stated that HP was "interested to learn any further information" Acceleron had in order to "conduct a complete and accurate assessment." Acceleron thus argues that "HP's letter admits that HP had not determined that its legal interests were adverse to Acceleron." We are not persuaded. First of all, Mr. Ritz's letter was dated October 1, 2007. HP did not file the declaratory judgment action until October 17. HP may well have conducted a thorough infringement analysis in the interim. More importantly, HP is not required to make a formal declaration of having an adverse legal interest. Indeed, HP's filing of the suit seeking declaratory judgment is indicative of its belief that Acceleron was threatening to assert its rights to the '021 patent against HP.

Finally, we observe that Acceleron is solely a licensing entity, and without enforcement it receives no benefits from its patents. This adds significance to the fact that Acceleron refused HP's request for a mutual standstill—and such a limited standstill is distinguishable from a covenant not to sue, such as that cited by the district court in Prasco, LLC, v. Medicis Pharmaceutical Corp., 537 F.3d 1329, 1341 (Fed. Cir. 2008).

This court has explained that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." SanDisk, 480 F.3d at 1381. The facts of this case, when viewed objectively and in totality, show that Acceleron took the affirmative step of twice contacting HP directly, making an implied assertion of its rights under the '021

patent against HP's Blade Server products, and HP disagreed.[1]  Therefore, we hold that there is declaratory judgment jurisdiction arising from a "definite and concrete" dispute between HP and Acceleron, parties having adverse legal interests.

### III.    CONCLUSION

As the district court recognized in its careful opinion analyzing declaratory judgment jurisdiction, there is no bright-line rule for distinguishing those cases that satisfy the actual case-or-controversy requirement from those that do not.  See MedImmune, 549 U.S. at 127.  Our decision in this case undoubtedly marks a shift from past declaratory judgment cases.  However, MedImmune has altered the way in which the Declaratory Judgment Act applies to patent law cases, requiring that legal interests be evaluated in patent cases under the general criteria of the Act.  Our jurisprudence must consequently also evolve, and in this case the facts demonstrate adverse legal interests that warrant judicial resolution.  The dismissal of the district court is reversed and the action is remanded.

### IV.    COSTS

Each party shall bear its own costs.

### REVERSED AND REMANDED

---

[1]    The district court found that there was no history of litigation by Acceleron regarding the '021 patent.  Hewlett-Packard, 601 F. Supp. 2d at 589.  A history, or the lack thereof, of litigating in the industry can certainly be a factor to be considered.  See Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy.").  However, we note that Acceleron only acquired the '021 patent on May 31, 2007 and initiated the contact with HP merely three and half months later.  Therefore, in this case, the fact that Acceleron had not filed any suit against others in such a short period is not a factor weighing against finding declaratory judgment jurisdiction.