# United States Court of Appeals for the Federal Circuit

_____

**MITEK SYSTEMS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED SERVICES AUTOMOBILE ASSOCIATION,**
*Defendant-Appellee*

_____

2021-1989

_____

Appeal from the United States District Court for the Eastern District of Texas in No. 2:20-cv-00115-JRG, Chief Judge J. Rodney Gilstrap.

_____

Decided: May 20, 2022

_____

BRIAN MACK, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for plaintiff-appellant. Also represented by DAVID EISEMAN, IV.

LISA GLASSER, Irell & Manella LLP, Newport Beach, CA, argued for defendant-appellee. Also represented by MICHAEL DAVID HARBOUR, JASON SHEASBY, Los Angeles, CA.

_____

Before DYK, TARANTO, and CUNNINGHAM, *Circuit Judges*.

TARANTO, *Circuit Judge.*

In November 2019, Mitek Systems, Inc. brought suit in the United States District Court for the Northern District of California against United Services Automobile Association (USAA). It sought a declaratory judgment, under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that Mitek and its customers have not infringed, either directly or indirectly, any valid and enforceable claim of USAA's U.S. Patent Nos. 8,699,779, 9,336,517, 8,977,571, and 9,818,090 (hereinafter referred to as the patents-in-suit). In response, USAA filed a motion making two requests. It sought dismissal of the complaint on the grounds that there was no case or controversy between USAA and Mitek as required by Article III of the Constitution, so the case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and in any event, the court should exercise discretion not to hear Mitek's claim for declaratory relief. In the alternative, USAA requested transfer of the action to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404.

In April 2020, the California court, without ruling on the dismissal part of the motion, ordered the case transferred to the Texas forum. *Mitek Systems, Inc. v. United Services Automobile Association*, No. 19-cv-07223, 2020 WL 1922635 (N.D. Cal. Apr. 21, 2020) (*Transfer Order*). In April 2021, the Texas court dismissed for want of a case or controversy and stated that, even if jurisdiction existed, it would exercise its discretion to decline to entertain the declaratory-judgment action. Order, *Mitek Systems, Inc. v. United Services Automobile Association*, No. 2:20-cv-00115 (E.D. Tex. Apr. 28, 2021), ECF No. 69 (*Dismissal Order*); *see also* J.A. 11–19. On Mitek's appeal, we vacate the Texas court's dismissal and remand for further proceedings. The remand is to the Texas court because we affirm the California court's transfer order.

## I

## A

USAA, a reciprocal inter-insurance exchange, is organized under Texas law and has its principal place of business in San Antonio, Texas. USAA owns the four patents-in-suit, all of which address the use of a mobile device to capture an image of a bank check and to transmit it for deposit. The related '779 and '517 patents describe an "alignment guide . . . in the field of view of a camera associated with a mobile device used to capture an image of a check." '779 patent, col. 1, lines 40–42; '517 patent, col. 1, lines 51–53. "When the image of the check is within the alignment guide in the field of view, an image may be taken by the camera and provided from the mobile device to a financial institution." '779 patent, col. 1, lines 42–45; '517 patent, col. 1, lines 53–56. Similarly, the related '571 and '090 patents describe "[t]he monitoring" of an image of a check that is in the field of view of the camera, which "may be performed by the camera, the mobile device and/or financial institution that is in communication with the mobile device." '571 patent, col. 1, lines 38–43; '090 patent, col. 1, lines 51–56. "When the image of the check in the field of view passes monitoring criteria," such as criteria for proper lighting or framing, "an image may be taken by the camera and provided from the mobile device to a financial institution." '571 patent, col. 1, lines 43–46; *id.*, col. 3, lines 58–61; '090 patent, col. 1, lines 56–59; *id.*, col. 4, lines 10–13.

For the purposes of this appeal, Mitek deemed claim 1 of the '779 patent to be representative, which recites:

1. A system for depositing a check, comprising:

a mobile device having a camera, a display and a processor, wherein the processor is configured to:

project an alignment guide in the display of the mobile device, the display of the mobile

device displaying a field of view of the camera;

monitor an image of the check that is within the field of view;

determine whether the image of the check aligns with the alignment guide;

automatically capture the image of the check when the image of the check is determined to align with the alignment guide; and

transmit the captured image of the check from the camera to a depository via a communication pathway between the mobile device and the depository.

'779 patent, col. 18, lines 36–51.

B

Mitek is a Delaware corporation and has its headquarters and principal place of business in San Diego, California.[1] Mitek created software for mobile check capture that provides "automatic image capture technology," J.A. 494 (Carnecchia Decl. ¶ 3) (capitalization altered), which enables the "instant capture of quality images with a mobile or desktop device," J.A. 36 (Compl. ¶ 28). It licenses the software, through a product it calls MiSnap™, in the form of a development kit to financial institutions, often indirectly through third-party providers of services to such

_____

[1]    We recite facts from the complaint and from additional evidence submitted in the district court—without endorsing the assertions of fact—that play roles in the disposition of the motions at issue discussed later in this opinion.

institutions.   J.A. 29, 36 (Compl. ¶¶ 3, 28); J.A. 494–96 (Carnecchia Decl. ¶¶ 2–7).

Mitek alleges that, in early 2017, USAA (through its attorneys at Epicenter Law, based in Burlingame, California) began sending licensing letters to financial institutions, including Mitek customers.  J.A. 29–30 (Compl. ¶ 8).  After a Mitek customer, Wells Fargo Bank (headquartered in San Francisco), received its letter from USAA, USAA and Wells Fargo held discussions in May and June of 2018.  J.A. 30 (Compl. ¶¶ 9–10).  But in June 2018, USAA sued Wells Fargo for infringement of the patents-in-suit in the Eastern District of Texas.  *See* Complaint, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245 (E.D. Tex. June 7, 2018), ECF No. 1.  In its First Amended Complaint against Wells Fargo, USAA mentioned Mitek and/or MiSnap™ at least twice.  J.A. 93–95 (First Am. Compl. ¶¶ 29, 36).  As the case progressed, USAA served Mitek with a subpoena pursuant to Federal Rules of Civil Procedure 26, 34, and 45 and obtained documents, source code, and testimony from Mitek regarding the operation of MiSnap™.  J.A. 633–57.  The case went to trial on October 30, 2019, on two of the four patents-in-suit (the '571 and '090 patents), and Mitek and its product were frequently mentioned in the litigation of USAA's infringement charge.  *E.g.*, J.A. 515–17; J.A. 686; J.A. 720–23.

On November 1, 2019, the third day of the Wells Fargo trial, Mitek filed a complaint against USAA in the Northern District of California, seeking a declaratory judgment that "Mitek and its customers have not infringed, either directly or indirectly, any valid and enforceable claim" of any of the patents-in-suit.   J.A. 38–42 (Compl. ¶¶ 35–58, Prayer for Relief A–D).  In the section of this declaratory-judgment complaint addressing jurisdiction, Mitek made a number of allegations.

First, Mitek alleged that USAA "sent over 1,000 patent licensing demand letters to financial [institutions] across

the country, most of which are Mitek customers," and that "[t]hese letters explained that 'USAA has asked Epicenter Law to approach financial institutions to offer a license, on reasonable terms, as fair compensation for the continued use of [its] patent-protected invention.'" J.A. 29–30 (Compl. ¶ 8) (quoting J.A. 44 (Compl. Ex. A)). According to Mitek, "at least some of these letters included one or more 'claim charts' detailing Mitek's customers' infringement of one or more of the Patents-in-Suit as well as a 'Patent List' identifying one or more of the Patents-in-Suit." J.A. 30 (Compl. ¶ 8) (citing J.A. 43–82 (Compl. Ex. A)). Mitek also alleged that "[i]n response to USAA's massive patent enforcement and letter writing campaign, Mitek has received demands for indemnification from its customers and suppliers pursuant to" contractual agreements with its customers, which include "indemnification provisions relating to actual or alleged patent infringement by Mitek's technology." J.A. 31–32 (Compl. ¶ 13). To support these claims, Mitek attached one letter as an exhibit: a USAA licensing letter sent to Mitek customer Mission Federal Credit Union on January 22, 2018, which included a claim chart for claims of U.S. Patent No. 8,708,227 (not one of the patents-in-suit and from a different family), and a Patent List that included over 70 patents, including three of the four patents-in-suit. J.A. 43–82 (Compl. Ex. A). Mitek did not give concrete examples regarding indemnification or attach any documents embodying an indemnification agreement or a demand for indemnification from any of its customers.

Second, concerning the Wells Fargo litigation, Mitek alleged that USAA "implicitly accused Mitek of encouraging and contributing to the infringement of each of the Patents-in-Suit by supplying its MiSnap™ technology to financial institutions for incorporation within their mobile banking applications," J.A. 30–31 (Compl. ¶¶ 11–12), and Mitek attached USAA's First Amended Complaint against Wells Fargo as an exhibit, J.A. 83–131 (Compl. Ex. B).

Elaborating on the allegation, Mitek asserted that "[o]n information and belief, in the Wells Fargo lawsuit, USAA has accused Wells Fargo Bank of infringing each of the Patents-in-Suit at least in part by virtue of Wells Fargo Bank's use of Mitek's software and technology, including MiSnap™," and that "USAA also alleged in the Wells Fargo lawsuit that the accused Mitek technology being used by Wells Fargo has no substantial non-infringing uses." J.A. 31 (Compl. ¶ 12). Mitek concluded: "Mitek therefore has a real and substantial apprehension of imminent litigation between Mitek and USAA for direct infringement, inducement, and contributory infringement of the Patents-in-Suit." J.A. 31 (Compl. ¶ 12).

Five days after Mitek filed its declaratory-judgment complaint in the California forum, the jury in the USAA case against Wells Fargo in the Texas forum rendered a verdict for USAA. *See* Jury Verdict, *United Services Automobile Association v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00245 (E.D. Tex. Nov. 6, 2019), ECF No. 322. A couple of months later, after USAA obtained an additional verdict against Wells Fargo on two other patents, a news article commented that USAA "hailed the latest decision and suggested [that] other banks should be on alert if they use the same technology" as Wells Fargo. J.A. 768–70 (also stating "[t]hese lawsuits have repercussions for the industry, because Mitek's technology is used by 6,500 other institutions").

C

On January 15, 2020, in Mitek's declaratory-judgment action in California, USAA moved for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction, or for dismissal based on the discretion granted to the district court by the Declaratory Judgment Act. J.A. 254–73. In the alternative, USAA sought transfer to the Eastern District of Texas. J.A. 273–77. In support of its motion, USAA

submitted additional evidence, including documents and transcripts from the Wells Fargo litigation. J.A. 278–80.

On April 21, 2020, the California district court granted USAA's motion to transfer the declaratory-judgment action to the Eastern District of Texas, without ruling on the motion to dismiss. *Transfer Order*, 2020 WL 1922635, at *1. After determining that the action could have been filed in the Eastern District of Texas, the California district court analyzed whether the convenience of parties and witnesses, and the interests of justice, weighed in favor of a transfer. *Id.* at *3. The court determined that the requested transfer would "facilitate at the very least coordination" with the Wells Fargo litigation (tried by Judge Gilstrap in the Eastern District of Texas), which involved the same patents and technology; that Mitek's choice of forum in the Northern District of California was entitled to little deference; and that witness convenience was a neutral consideration. *Id.* at *3–5.

On July 15, 2020, Judge Gilstrap, having received the transferred case, heard argument from counsel on the motion to dismiss. J.A. 957–1014. Eight months later, in March 2021, Mitek filed a supplemental brief, informing the court of subsequent developments and submitting additional evidence. J.A. 1015–19. Specifically, Mitek informed the court that, in February 2021, Wells Fargo and USAA had settled their dispute but that, in December 2020, USAA had filed suit against another Mitek customer, PNC Bank, for infringement of two of the four patents-in-suit and that PNC had, through a third-party intermediary, made an indemnity demand. J.A. 1016–17; *see also* J.A. 1035–36.

The next month, on April 28, 2021, the district court granted USAA's motion to dismiss, ruling that there was no case or controversy between the parties. *Dismissal Order* at 8. The district court viewed Mitek's basis for subject-matter jurisdiction as resting on either (1) the Wells Fargo

litigation or (2) USAA's letters to Mitek customers and indemnification demands assertedly received by Mitek, but the court found each basis insufficient to support jurisdiction. *Id.* at 2–8. Alternatively, the district court noted that "[e]ven if the Court's determination that subject matter jurisdiction is lacking were later set aside, the Court would similarly and for the same reasons exercise its discretion and decline to exercise jurisdiction over Mitek's declaratory judgment action." *Id.* at 8–9.

Mitek timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II

## A

Whether the district court had subject-matter jurisdiction is a question we review de novo. *Microsoft Corp. v. DataTern, Inc.,* 755 F.3d 899, 903 (Fed. Cir. 2014). But the evaluation is based on the particular facts (determined according to the procedural posture). The Supreme Court has recognized that its precedents "do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and that do not," and that, where jurisdiction is being assessed based on the complaint, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). That formulation—which "summarize[s]" a formulation focusing on whether the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," is "real and substantial," and "[admitting] of specific relief through a decree of a conclusive character"—indicates the importance of identifying the particular facts that may bear on

whether the standard is met in a given case, in light of "all the circumstances." *Id.* (citation omitted).

The case-or-controversy inquiry has a dual temporal focus. First, "[a] declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing." *Microsoft*, 755 F.3d at 906; *see also Matthews Int'l Corp. v. Biosafe Engineering, LLC*, 695 F.3d 1322, 1331 (Fed. Cir. 2012); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1383–84 (Fed. Cir. 2010). Second, a case or controversy must remain present throughout the course of the suit. *See Preiser v. Newkirk*, 422 U.S. 395, 401–02 (1975); *Int'l Medical Prosthetics Research Associates, Inc. v. Gore Enterprise Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986).

Different procedural routes are available to identify the facts underlying the case-or-controversy determination, and clarity about which route is used is important, in part because the parties should know what opportunities they have for establishing facts of potential significance and, later, because the standard of appellate review is affected by the route taken. Thus, when determining whether there was standing at the time of the filing of the action based on pre-complaint events, and whether standing was maintained thereafter, the district court may rely on pleaded and undisputed facts or on findings that resolve factual disputes, reflecting the different possible treatments of a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). Under Fifth Circuit precedent, which we follow on a non-patent-specific issue such as this, a Rule 12(b)(1) motion sometimes calls for adjudication of factual disputes and sometimes does not:

> [T]he district court is to accept as true the allegations and facts set forth in the complaint. Additionally, "the district court is empowered to consider

> matters of fact which may be in dispute." The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012) (citations omitted); *see also Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004); *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). In the specific setting of a case-or-controversy challenge, the Fifth Circuit has said that a challenge is "factual" rather than "facial" "if the defendant 'submits affidavits, testimony, or other evidentiary materials.'" *Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (citation omitted). "To defeat a factual attack, a plaintiff 'must prove the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Id.* (citation omitted).[2]

---

[2] The Fifth Circuit's approach reflects the generally recognized facial/factual distinction in the treatment of jurisdictional challenges. *See, e.g.*, 5B C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure Civil* § 1350 (3d ed. Apr. 2022 Update) (*Wright & Miller*); 5C *Wright & Miller* § 1363; *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993); *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

B

In this case, Mitek's jurisdictional argument rests on two bases. Mitek builds on our recognition of certain sufficient conditions for finding a case or controversy:

> [W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.

*Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). Reversing the order, and urging that it need not concede an indemnity obligation for customers' demands for indemnification to suffice, Mitek asserted in the district court, and asserts here, that it meets the *MedImmune* standard on each of two bases: (a) its potential liability for infringement; and (b) the alleged demands for indemnity made by many of its licensees after USAA sent them letters seeking to sell them licenses to USAA patents. Mitek Opening Br. 14–26.

To a large extent, the parties have debated the case-or-controversy issue at too high a level of generality. The issues raised by Mitek's asserted bases of jurisdiction, we conclude, require finer parsing of the issues and more particularized determinations than we have before us, both from the parties and from the district court. Moreover, the district court was unclear in identifying whether it was treating the Rule 12(b)(1) motion as a facial challenge or as a factual challenge, in whole or in part, and the parties themselves have been unclear about this. We hold that further proceedings are needed in order for the case-or-controversy determination to be made and that, subject to

forfeiture determinations we leave initially to the district court, the proceedings should include additional fact-finding proceedings. We therefore vacate the jurisdictional dismissal. We remand for further proceedings on the jurisdictional issue—and also, as we conclude in Part III *infra*, on the issue of discretion-based dismissal.

1

Mitek's first asserted basis of a case or controversy is its potential liability to USAA for infringement. In arguing for the existence of a case or controversy on that basis, at least as of the time of filing of the declaratory-judgment action, Mitek focused on what had occurred in USAA's suit against Wells Fargo. The trial in the Wells Fargo case was in progress at the time Mitek filed for a declaratory judgment on November 1, 2019. Though the jury rendered a verdict in USAA's favor a few days later, the case was not resolved until more than a year later, shortly before the district court ruled on the motion to dismiss, which had been filed in January 2020 and on which the district court in Texas had heard argument in July 2020.

The district court concluded that "the Wells Fargo Case could not have provoked in Mitek a reasonable apprehension of suit by USAA." *Dismissal Order* at 6.[3] The district

---

[3]    The Supreme Court in *MedImmune* rejected a general requirement of a reasonable apprehension of suit. 549 U.S. at 132 n.11; *see also SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007). Here, however, the district court's use of that concept is directly responsive to Mitek's particular theory as to whether Article III standing existed under the *MedImmune* standard. *See also Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012) ("[I]n the wake of *MedImmune*, 'proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff

court did not determine that USAA had disclaimed any interest in suing Mitek or had made a strategic decision (*e.g.*, that all actions for infringement of the patents-in-suit should be against banks and other Mitek customers, not Mitek) that a suit against Mitek was not reasonably possible. And we find several ways in which the reasons the district court did give are inadequate on the record before us.

The court reasoned that "Mitek sitting on its hands during the Wells Fargo Case and neglecting to intervene is probative (and perhaps the best indicator) as to . . . any actual apprehension Mitek felt with regard to litigation by USAA." *Id.* at 4. But the court did not explain why Mitek's "neglecting to intervene"—a point distinct from the simple fact that USAA had not (yet) sued Mitek or might even prefer to sue individual banks—has particular weight as a basis for concluding that Mitek had no reasonable apprehension of itself being sued. Assessing the weight of the choice not to intervene (in USAA's first suit on these patents) would require considering the legal, factual, and contextual factors bearing on the opportunity for intervention and the benefits of intervention in another's suit compared to alternatives. The district court's opinion does not include such an analysis of the intervention choice, and in the absence of such an analysis, we do not see how the decision not to intervene in the first suit on the patents counts materially against a finding of a reasonable apprehension of suit.

The district court also reasoned that the substance of the evidence in the Wells Fargo case undermined Mitek's assertion that it faced potential liability for infringement. The court explained: "The repeated testimony given during the Wells Fargo trial was that without significant

can satisfy the more general all-the-circumstances test' to establish jurisdiction." (citation omitted)).

customization by Wells Fargo, the Mitek Mi-Snap product does not infringe the asserted patent." *Id.* at 4–5. Seemingly on that basis, the court concluded that the Wells Fargo litigation did not contain implied accusations of infringement by Mitek and, in fact, "gave Mitek every reason to think that USAA does *not* intend to pursue any claim for patent infringement against Mitek." *Id.* at 4.

This reasoning is not sufficiently complete to support the conclusion drawn. Determining whether Mitek reasonably might be liable for infringement requires "look[ing] to the elements of the potential cause of action" and considering both the patent claims at issue and the alleged facts concerning Mitek and its customers in light of those elements. *Microsoft*, 755 F.3d at 903–05. Although Mitek is not obligated to prove, for jurisdictional purposes, that it infringes the patents-in-suit (which is what it ultimately seeks to *disprove* in the case), "there must be allegations by the patentee or other record evidence that establish at least a reasonable potential that [infringement claims against Mitek] could be brought." *Id.* at 905. This requires separate consideration of the separate types of infringement (notably, direct infringement, inducement of infringement, and contributory infringement) of the claims of the patents-in-suit, and of the bearing on any infringement of such claims of the fact stressed by the district court—namely, that bank customers customize Mitek's software.

The district court did not conduct an analysis at this level of specificity. The district court's reference to customization does not identify the choices that Mitek's customers make and tie those choices to the coverage of a claim; consequently, the reference does not show that, without the customer's choices, Mitek's product itself is not within the claim coverage. And even if customization is how a Mitek customer comes within a claim element, the need for such customization does not exclude Mitek liability for inducement under 35 U.S.C. § 271(b)—if, for example, Mitek provides manuals, along with the software, that meet the

standard of taking an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011); *see, e.g.*, J.A. 720–22 (evidence potentially relevant to inducement). Analysis of that possibility appears to be needed. So too of any possibility of contributory infringement if MiSnap™ is not suitable for substantial non-infringing uses. 35 U.S.C. § 271(c); *see, e.g.*, J.A. 434–35, 566–67 (evidence potentially relevant to contributory infringement). Even direct infringement may warrant more analysis than is reflected in the district court's opinion. *See* J.A. 31 (Compl. ¶ 12); *see also* J.A. 478.[4]

The required analysis also should be clear about whether the Rule 12(b)(1) motion is being treated as presenting a facial or a factual challenge and whether the preconditions for treating such a motion as a factual challenge were met. The district court, though seeming to recognize that facts were placed in dispute, was less than clear about this distinction. *Compare Dismissal Order* at 2 (implying in legal standard section that the court was going to decide the motion on the complaint alone, accepting as true the allegations and facts set forth therein), *with id.* at 4–5 (seemingly treating USAA's motion to dismiss as a factual attack on whether USAA implicitly accused Mitek of infringement in the Wells Fargo litigation). It appears that USAA took the steps required to mount a factual attack that entitled it to a resolution of at least some factual disputes, not just to a decision on the sufficiency of the complaint when combined with undisputed facts. *See* J.A. 262–

---

[4]    The parties have focused on claim 1 of the '779 patent on appeal, but oral argument suggested the possibility that it might not be fully representative for the direct, contributory, or induced infringement analysis. *See* Oral Arg. at 22:00–27, 44:17–37, 1:04:36–05:06.

67 (USAA's motion to dismiss, submitting evidence from Wells Fargo trial); J.A. 882–84 (USAA's reply, specifically asserting that USAA's motion was factual, not facial); J.A. 957–1014 (argument to district court, discussing at length what was shown in the Wells Fargo trial). But we leave that determination to the district court in the first instance, as we do the determination whether either party forfeited any particular contention (about a particular type of infringement, for example) or right to present, or obtain discovery of, additional evidence.

Also for possible consideration on remand, if not forfeited, are related issues concerning events and evidence that post-date the filing of this declaratory-judgment action on November 1, 2019. One such issue is whether, even if a case or controversy between USAA and Mitek existed on that day based on potential Mitek liability, it ceased to exist later—for example, once USAA and Wells Fargo had settled their case and USAA still had not sued Mitek even though it had sued another bank. Another issue is whether any case or controversy between USAA and Mitek as of November 1, 2019, extended beyond the potential for Mitek liability involving Mitek's dealings with Wells Fargo specifically. Both of these issues, and perhaps others, might involve exploring the extent of similarities between Mitek's relationships with Wells Fargo and other customers.[5]

In short, on remand, the district court's primary task regarding Mitek's first asserted basis for establishing a case or controversy will be to ascertain the alleged role of the Mitek technology in the banks' applications and the alleged role that the Mitek technology plays in infringement claims. Making those core determinations, and

---

[5] Mitek has included in the record a news article containing statements attributed to USAA about "the banking industry." J.A. 768–70. We do not decide what, if any, role that article has to play in this case.

considering any other pertinent issues, will supply a fuller basis for the bottom-line assessment of Mitek's first theory of Article III jurisdiction.

2

For similar reasons, the district court's case-or-controversy analysis of USAA's letters to Mitek customers combined with subsequent indemnification demands is inadequate. Concerning the letters specifically, the court stated that it was "not convinced that these letters create a justiciable controversy," observing that Mitek had submitted only one letter with the complaint—a letter that came from USAA's licensing counsel and that did not threaten litigation, include claim charts for the patents-in-suit, or identify Mitek or particular products as infringing. *Dismissal Order* at 6–7. The court did not address the complaint's allegations about indemnification requests from other Mitek customers who had received letters. *Id.* at 7–8 (addressing indemnification only with respect to Wells Fargo and PNC).

The first part of this two-part assertion is that the USAA letters to Mitek's customers created an actual infringement controversy between USAA and those customers that would have sufficed for those customers to seek declaratory relief. This is a necessary element of the asserted indemnity-based interest of Mitek. *See BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 981 (Fed. Cir. 1993) ("The agreement to defend or indemnify a third person does not provide the actual controversy whereby the defender or indemnitor may bring a declaratory action on its own behalf when there is no actual controversy involving the indemnitee."). On this first part, we conclude that the allegations in Mitek's complaint concerning USAA's letter campaign and the attached example letter, viewed in light of the Wells Fargo litigation, are sufficient to show a

controversy between USAA and Mitek's customers who received letters.[6]

As we explained in *Hewlett-Packard Co. v. Acceleron LLC*, "declaratory judgment jurisdiction exists 'where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license.'" 587 F.3d 1358, 1361 (Fed. Cir. 2009) (citation omitted). But "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more," does not suffice. *Id.* at 1362. Here, there is just enough "more."

The example letter attached to the complaint includes three of the four patents-in-suit (covering both relevant families) in its patent list, stating that "these are . . . likely to be relevant to your offering of a mobile check deposit application." J.A. 45, 79–82 (Compl. Ex. A). Additionally, the letter provides a claim chart that, in addressing a different, unrelated patent, explains "in detail . . . how the claims relate to the mobile deposit application offered by one of the largest banks in the US," which USAA states it believes "operates in a similar way" to the deposit application of the letter recipient. J.A. 45 (Compl. Ex. A). Particularly in light of USAA's recent litigation against Wells Fargo on the four patents-in-suit, which the customer would know was in part based on use of Mitek technology, *see Micron*

---

6    We do not read USAA's motion to dismiss as contesting the facts concerning the USAA letters to Mitek's customers. *See* J.A. 269–70. We therefore do not view the motion as presenting a factual challenge on this point, but only a facial challenge to the legal sufficiency of the complaint's allegations to establish the letters half of its indemnity-based argument for the existence of a case or controversy.

*Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 901–02 (Fed. Cir. 2008), we conclude that, under the totality of the circumstances, there is enough for Mitek's other customers to reasonably interpret USAA's actions as an implicit assertion of infringement based on incorporation of Mitek technology, *Hewlett-Packard*, 587 F.3d at 1363.

The second half of Mitek's indemnity-based assertion of a case or controversy concerns whether, beyond bare indemnity demands or requests, there was actually a "reasonable potential" of Mitek's indemnification liability, with that potential giving Mitek the required concrete stake in litigating the underlying customers' freedom from infringement liability to USAA. *See Microsoft*, 755 F.3d at 905. We have sometimes used the language of "obligation" when referring to the indemnity issue in this context. *See, e.g., id.* at 904; *Arris*, 639 F.3d at 1375; *Allied Mineral Products, Inc. v. OSMI, Inc.*, 870 F.3d 1337, 1340–41 (Fed. Cir. 2017). But we have never held that the validity of an indemnity demand, *i.e.*, the applicability of an indemnity agreement to the demander's circumstances, needs to be conceded to establish subject-matter jurisdiction. Indeed, other cases, such as *Microchip Technology Inc. v. Chamberlain Group, Inc.*, refer only to the "existence of an indemnity agreement," not its conceded applicability in the particular case. 441 F.3d 936, 943 (Fed. Cir. 2006); *see also Creative Compounds, LLC v. Starmark Laboratories*, 651 F.3d 1303, 1316 (Fed. Cir. 2011). Similarly, *Microsoft* suggests that only the "merit of the customer request" is relevant, which does not require a concession of the request's validity. 755 F.3d at 904. And such a concession is not required to establish that the declaratory-judgment plaintiff (receiving indemnity demands) has a definite, concrete, immediate, real interest in obtaining the declaration sought.

What remains is a need for further proceedings on remand. The district court should first determine which Rule 12(b)(1) framework to apply, *i.e.*, determine whether USAA mounted a factual attack on the indemnity allegations of

Mitek's complaint.  *See, e.g.*, J.A. 267–68, 270–71 (USAA motion to dismiss); J.A. 883, 885 (USAA reply); J.A. 360, 899 (evidence regarding Wells Fargo indemnification, potentially conflicting with allegations in the complaint, *see* J.A. 31–32 (Compl. ¶ 13)).  If it finds that USAA has not mounted a factual attack, the court must closely analyze the relevant indemnity allegations, J.A. 31–32 (Compl. ¶ 13), to determine whether they suffice.  If it finds that USAA has mounted a factual attack, we again leave it to the district court to decide how to proceed, including whether the parties should have the opportunity to present additional evidence, and to address (at least for purposes of continuing jurisdiction) issues concerning post-complaint events, such as USAA's suit against PNC and PNC's indemnification request to Mitek through a third party, J.A. 1035–36.  The character of the indemnity demands received and the precise scope of the corresponding indemnity agreements, *see* Oral Arg. at 33:20–34:25; Mitek Reply Br. 17 n.4, may bear heavily on the sufficiency of Mitek's indemnity-based interest in obtaining the requested declaratory judgment that can be sought based on that interest—namely, a declaration of its customer's nonliability because of noninfringement or invalidity of the patents at issue.

## III

The court stated that, in case its "determination that subject matter jurisdiction is lacking were later set aside, [it] would similarly and for the same reasons exercise its discretion and decline to exercise jurisdiction over Mitek's declaratory judgment action." *Dismissal Order* at 8–9.  We review a district court's discretionary decision to dismiss for abuse of discretion. *Communications Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361 (Fed. Cir. 2020). Where a discretionary decision rests on an inadequate explanation and might well be different without the deficiencies, we may vacate the decision and remand for reconsideration.  *See, e.g.*, *Whitserve, LLC v. Computer*

*Packages, Inc.*, 694 F.3d 10, 35–36 (Fed. Cir. 2012). We follow that course regarding the discretion ruling here.

Given the Declaratory Judgment Act's use of the word "may," 28 U.S.C. § 2201(a), the Supreme Court has stated that a district court has "unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (quoted with approval in *MedImmune*, 549 U.S. at 136). The Court likewise has said that "facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [district courts'] grasp." *Id.* at 289 (again quoted with approval in *MedImmune*, 549 U.S. at 136). The scope of the discretion remains unclear. In *Wilton*, the Court "conclude[d] only that the District Court acted within its bounds in staying [an] action for declaratory relief where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court." *Id.* at 290.

For our part, we have said that, as long as a district court "acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, [it] has broad discretion to refuse to entertain a declaratory judgment action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813–14 (Fed. Cir. 1996). But, consistent with the constraints imposed by the noted statutory purposes and judicial-administration principles, we have insisted: "There must be well-founded reasons for declining to entertain a declaratory judgment action." *Capo, Inc. v. Dioptics Medical Products*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *see also Micron*, 518 F.3d at 903–05; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993). As an example, we explained in *Ford Motor Co. v. United States* that, "[w]hile the existence of another adequate remedy does not necessarily bar a declaratory judgment, district courts may refuse declaratory relief where an alternative remedy is better or more effective." 811 F.3d 1371, 1379–80 (Fed. Cir. 2016) (citations omitted); *see also*

10B *Wright & Miller* § 2758 & n.6 (4th ed. Apr. 2022 Update).

Here, the district court did not give reasons independent of its reasons for its jurisdictional dismissal, which we have held above to be deficient in various respects. Without further analysis of why those reasons make it appropriate to decline to entertain the claim for declaratory relief as a matter of discretion when we have determined that the same reasons do not support the jurisdictional dismissal (at least at this stage of the proceedings), the district court's discretion ruling cannot stand. We note in particular that the district court may have been suggesting that the route of intervention in one or more USAA suits against Mitek customers is preferable, considering statutory purposes and judicial-administration principles, to the declaratory-judgment action Mitek initiated here. *See* Mitek Opening Br. 32 (so reading the district court opinion); USAA Response Br. 45 (same). If so, a determination along those lines would require more analysis of various issues, such as (but not necessarily limited to): (1) whether Mitek could intervene in such actions and under what circumstances, (2) whether intervention would provide Mitek adequate relief from the harms the Declaratory Judgment Act recognizes as a basis for such relief, (3) the scope of what would have to be adjudicated in Mitek's suit for a declaration of noninfringement on behalf of Mitek and all of its customers and whether that scope could properly be limited to address unwieldiness, and (4) whether ultimately the intervention route is more effective or efficient than the declaratory-judgment route.

We vacate the discretionary dismissal.

## IV

Mitek argues that, if we disturb the dismissal and remand (as we are doing), we should order the case to be transferred on remand back to the Northern District of California because the original order transferring the case to

the Eastern District of Texas should be reversed. *See* Mitek Reply Br. 25. We reject that argument.

A

As an initial matter, Fifth Circuit law appears to preclude Mitek from successfully challenging the transfer order in the present appeal, taken after final judgment. The Fifth Circuit has held that "mandamus is the prescribed vehicle for reviewing rulings on transfers of cases pursuant to 28 U.S.C. § 1404(a)." *Defense Distributed v. Bruck*, 30 F.4th 414, 423 (5th Cir. 2022) (citing *In re Volkswagen of America, Inc.*, 545 F.3d 304, 309 (5th Cir. 2008) (en banc), and *In re Rolls Royce Corp.*, 775 F.3d 671, 676–77 (5th Cir. 2014)). As we have recognized, a key part of the Fifth Circuit's assessment is the conclusion that a party seeking to challenge a § 1404(a) transfer decision cannot succeed on an appeal from an adverse final judgment because the party "would not be able to show that it would have won the case had it been tried in a convenient forum," as is required by 28 U.S.C. § 2111 and Federal Rule of Civil Procedure 61. *In re HTC Corp.*, 889 F.3d 1349, 1352 n.5 (Fed. Cir. 2018) (citation omitted). To the extent that those precedents establish a rule of law precluding success in challenging a § 1404(a) transfer on a final-judgment appeal, or simply insist on a showing that the transfer was prejudicial regarding the merits of the judgment appealed, we must reject Mitek's challenge regarding transfer here.

After USAA pointed out this case law, Mitek declined to present a developed or persuasive reply. *See* Mitek Reply Br. 20–22.[7] Mitek cited (1) a Fifth Circuit decision, not

---

[7]    Mitek primarily responded to USAA's separate and alternative argument that Mitek forfeited review of the transfer order by not moving in the Texas forum to retransfer. *See* USAA Response Br. 49–50. We need not reach that issue.

involving transfer, recognizing that "generally, 'a party may obtain review of prejudicial adverse interlocutory rulings upon his appeal from adverse final judgment,'" *Diece-Lisa Industries, Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 247 (5th Cir. 2019) (citation omitted); (2) a decision of a different circuit (the Second), indicating that "[t]he failure to seek mandamus review of an interlocutory [transfer] ruling does not forfeit the opportunity to obtain review on appeal from a final judgment," but not repudiating the prejudice requirement, *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 176–177 (2d Cir. 2000); and (3) a practice guide that adds no supporting authority, The Rutter Group, *Federal Civil Procedure Before Trial, National Edition,* Ch. 4-K, § 6.b.[4:809] (Apr. 2021 Update). This response does not dispute the content of Fifth Circuit law or make a showing that the transfer order here, even if wrong, was in fact prejudicial.

B

In any event, Mitek has not demonstrated an abuse of discretion—*e.g.*, legal error, unreasonableness, clear factual error—in the transfer order issued by the California district court. *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 639 (9th Cir. 1988); *see also In re Nissim Corp.*, 316 F. App'x 991, 992 (Fed. Cir. 2008) (non-precedential). First, we see no such abuse regarding the court's assessment and weighing of the location of USAA's licensing counsel (Epicenter Law) in the Northern District of California, Mitek's location in a different district within California, and Mitek's choice of forum. *Transfer Order*, 2020 WL 1922635, at *4–5. Mitek's cited authorities are, at a minimum, not sufficiently on point to undermine the California court's conclusions on these matters. *See Neelon v. Bharti*, 596 F. App'x 532, 533 (9th Cir. 2014) (non-precedential) (discussing a "heavy burden of proof" to overcome a plaintiff's choice of forum and dismiss on forum non conveniens grounds); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008) (focusing on

enforcement activities for the purposes of determining personal jurisdiction over a declaratory-judgment defendant); *Sportsman for Sportsman v. California Overland, Ltd.*, No. 17-1064, 2018 WL 1865930, at *5 (D. Minn. Apr. 18, 2018) (analyzing forum shopping in the conflict-of-law context).

Next, concerning the convenience-of-witnesses component of the transfer analysis, Mitek contends that the most critical witnesses are Mitek witnesses who are likely to be located near its headquarters in the Southern District of California. *See* Mitek Opening Br. 39–41. We see no abuse of discretion, however, in the court's deeming USAA's potential witnesses also to be critical and determining that this factor was neutral. *See Transfer Order*, 2020 WL 1922635, at *5.

Finally, Mitek argues that the Wells Fargo litigation should not have supported transfer. Mitek Opening Br. 38–39; *see also Transfer Order*, 2020 WL 1922635, at *5. But it is not an abuse of discretion to consider the fact that the Eastern District of Texas was already familiar with the patents and technology. *See In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020); *see also In re Eli Lilly & Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013) (non-precedential). To be sure, that consideration might be so clearly outweighed by other considerations that it cannot support denial of transfer to a "far more convenient" venue, as we have recognized. *See In re Morgan Stanley*, 417 F. App'x 947, 949–50 (Fed. Cir. 2011) (non-precedential) (discussing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010), and *In re Verizon*, 635 F.3d 559 (Fed. Cir. 2011)). But here, as already discussed, it was reasonable for the court to find that the Northern District of California was not far more convenient than the Eastern District of Texas—and thus to transfer on the basis of judicial economy, as no other factors favored retaining the action.

MITEK SYSTEMS, INC. v.                                                27
UNITED SERVICES AUTOMOBILE ASSOCIATION

V

For the foregoing reasons, we vacate the district court's dismissal for lack of subject-matter jurisdiction, as well as its alternative discretionary dismissal, and remand to the Eastern District of Texas for further proceedings consistent with this opinion.

The parties shall bear their own costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**